# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>**HANKEY O'ROURKE<br>ENTERPRISES, LLC,**<br><br>**Debtor** | **Chapter 11<br>Case No. 19-30500-EDK** |

## AGREED FINAL ORDER PROVIDING ADEQUATE PROTECTION AND AUTHORIZING USE OF CASH COLLATERAL

This matter having come before the Court upon the *Debtor's Emergency Motion for Use of Cash Collateral* dated June 21, 2019 (the "<u>Motion</u>") filed by Hankey O'Rourke Enterprises, LLC, the above-captioned Debtor and Debtor in possession ("<u>Hankey</u>" or the "<u>Debtor</u>"), requesting authorization and approval, pursuant to sections 361 and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>"), for the Debtor's use of cash and other collateral in which IOFUS-FCC Holdings I, LLC ("IOFUS") and Bay Colony Development Corporation as servicer for the United States Small Business Administration ("Bay Colony" and together with IOFUS, the "Secured Creditors")[1] assert an interest, on the terms and subject to the conditions set forth in this Final Order; IOFUS having hereby consented to entry of this Final Order; and this Court having reviewed the Motion and all papers related thereto heretofore filed; and this Court possessing jurisdiction to consider the Motion; and venue being proper; and notice of the Motion and the hearing thereon having been sufficient

---

[1] The Debtor has provided notice of the Motion and the case to Bay Colony, but Bay Colony has not appeared in the case.

according to the certificates of service filed with the Court; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors, and good and sufficient cause having been shown;

THE COURT HEREBY FINDS:

A.     Petition. On June 21, 2019 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its businesses and managing its property as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     Jurisdiction and Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (d), and Local Rule 4001-2. Venue of the Debtor's chapter 11 case and the Motion in this District are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Debtor's Business. The Debtor owns the real property located at 109 Stockbridge Road, Great Barrington, Massachusetts 01230 (the "Property"). IOFUS holds senior mortgage liens and security interests in the Property and assignments of rent from the Property to secure certain indebtedness of the Debtor as described herein. Bay Colony holds junior liens and security interests in the Property.

D.     The Secured Creditors are Entitled to Adequate Protection. Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to provide adequate protection to the Secured Creditors in respect to the Debtor's use of Cash

Collateral (as defined below) and in respect of any decline in value of the Secured Creditors' interest in their Pre-petition Collateral (as defined below).

E. <u>IOFUS' Consent</u>. IOFUS has agreed to the adequate protection arrangements contemplated by this Final Order, all subject to and in accordance with the terms and conditions of this Final Order.

F. <u>Good Cause Shown</u>. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize disruption of the Debtor's business and operations and permit the Debtor to pay expenses necessary to the preservation of the Property. The adequate protection and other treatment proposed to be provided by the Debtor to the Secured Creditors as set forth in this Final Order will minimize disputes and litigation over the use of cash collateral.

G. <u>Budget</u>. The Debtor has proposed the Budget attached hereto as Exhibit "A" (the "<u>Budget</u>") for use of cash collateral through the Termination Date (as defined herein) and agreed to use the Secured Creditors' Cash Collateral substantially in conformance with the Budget, as provided herein.

H. IOFUS asserts that the Debtor and IOFUS are parties to, among others, the following pre-petition instruments, mortgages and loan agreements:

**IOFUS Loan 8828**

(i) Commercial Term Note dated as of May 23, 2008 in the original principal amount of $1,250,000.00 from Debtor to IOFUS, as amended and modified by that certain Modification of Note Agreement dated May 23, 2008 and as further modified by that certain Second Modification of Note Agreement dated May 23, 2011 (the "Note");

(ii) Commercial Mortgage, Security Agreement and Assignment of Leases and

Rents dated May 23, 2008 (the "Mortgage") encumbering the Property;

(iii)  Guaranty dated as of May 23, 2008 from Cove Bowling and Entertainment, Inc. ("Cove") guarantying all of the obligations of the Debtor to IOFUS;

(iv)  Collateral Assignment of Lease with Right of Reassignment Agreement dated May 23, 2008 by Cove and the Debtor in favor of IOFUS assigning to IOFUS all of Cove's right, title and interest to its Lease with Borrower dated May 23, 2008 (the "Assignment");

(v)  Guaranty dated as of May 23, 2008 from Thomas M. Hankey guarantying all of the obligations of the Debtor to IOFUS;

(vi)  Guaranty dated as of May 23, 2008 from Michael J. Hankey guarantying all of the obligations of the Debtor to IOFUS; and

(vii)  Guaranty dated as of May 23, 2008 from Juanita O'Rourke guarantying all of the obligations of the Debtor to IOFUS.

I.  The above described Note, Mortgage, Assignment, and all guaranties and all other agreements, instruments and documents executed in connection therewith, as the same may have been modified and amended from time to time, are hereinafter referred to collectively as the "Pre-petition Loan Documents."

J.  IOFUS asserts that the following amounts are due from the Debtor pursuant to the Pre-Petition Loan Documents:

(i)  As of the Petition Date, IOFUS asserts that the Debtor owed the following amounts, without defense, counterclaim or offset, under the Note exclusive of attorneys' fees and costs of collection:

Principal: $846,554.65
Interest: $32,235.38

Late Fees: $24,349.02
Expenses: $11,925.00
**TOTAL: $915,064.05**

K.     IOFUS asserts that it holds valid, binding, perfected, unavoidable pre-petition first priority mortgage liens, security interests and assignments of rent (the "Pre-petition Liens") in the Property and all rents and proceeds thereof or derived therefrom including, without limitation, all personal property of the Debtor (collectively, the "Pre-petition Collateral") securing all of the indebtedness evidenced by the Pre-petition Loan Documents in the amounts described in Section J(i) through (iii) above (collectively, the "Pre-petition Obligations"). IOFUS asserts that the Debtor holds no Claims and Defenses, as described in Section 7 hereof, against IOFUS with respect to any of the Pre-petition Liens, the Pre-petition Obligations and the Pre-petition Loan Documents. IOFUS asserts that it is entitled to exercise all of the rights and remedies set forth in the Pre-petition Loan Documents other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.     Motion Granted.  The Motion is hereby granted as provided in this Final Order.  Nothing herein constitutes IOFUS' consent to the Debtor's use of Cash Collateral beyond the Termination Date (as hereinafter defined).

2.     Authorization to Use Cash Collateral.  Subject to the provisions of this Final Order, the Debtor is authorized to use, from the date of this Final Order through the Termination Date (as hereinafter defined), pursuant to Section 363(c)(2) of the Bankruptcy Code, cash collateral (as defined in Section 363(a) of the Bankruptcy Code), including, without limitation, rents and any other cash collateral arising from the Property

("Cash Collateral"), provided, that such Cash Collateral may be used only to meet and satisfy the Debtor's actual and necessary expenses for the Property in an amount up to 110 percent (110%) of the aggregate expenses set forth in the Budget calculated on a monthly basis or as otherwise agreed to in writing by IOFUS. The Debtor shall be further authorized pursuant to this Final Order to use Cash Collateral in a manner or amount which does not conform to the Budget but constitutes a reasonable, actual, and necessary expense relating to the Property (such use of Cash Collateral, a "Non-Conforming Use") only (a) pursuant to an order of the Bankruptcy Court obtained on shortened notice to IOFUS and the United States Trustee or, (b) without further Court approval, up to an additional $5,000.00, if IOFUS has given its prior written consent to such Non-Conforming Use and notice of such approval to the United States Trustee. IOFUS is hereby entitled to all of the protections specified in this Final Order, including without limitation all liens and priorities, for any such Non-Conforming Use. IOFUS shall have no obligation to permit the use of Cash Collateral hereunder other than in accordance with the terms of the Budget and as set forth in this Final Order.

3.    Grant of Adequate Protection to the Secured Creditors.

(a)    Grant of Replacement Liens.  As adequate protection for the Debtor's use of Cash Collateral, the Secured Creditors are granted continuing post-petition replacement liens and security interests in all post-petition property (property arising, acquired, created or paid after the Petition Date including, without limitation, rents from the Property and proceeds of the Property) of the Debtor and its estate of the same type in which the Secured Creditors held valid and perfected liens and security interests as of the Petition Date (the "Adequate Protection Liens"). The Adequate Protection Liens shall

maintain the same priority, validity, and enforceability as the Secured Creditors' Pre-Petition Liens and shall secure all claims of the Secured Creditors, if any, arising from diminution in the value of the Pre-Petition Collateral from and after the Petition Date (collectively, the "Adequate Protection Obligations"). The Adequate Protection Liens shall be, and they hereby are, deemed perfected effective as of the Petition Date, and no further notice, filing, or other act shall be required to effect such perfection.  The Secured Creditors are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply. Notwithstanding anything to the contrary contained herein, the Adequate Protection Liens shall not encumber any cause of action or proceeds thereof recovered pursuant to Chapter 5 of the Bankruptcy Code.

      (b)    Payments.

      (i) *Payments to IOFUS.*  IOFUS shall receive monthly payments equal to $8,075.00. IOFUS may apply such payments to reduce the Prepetition Obligations (exclusive of legal fees and expenses and costs of collection) in accordance with the terms of the Pre-petition Loan Documents, provided that: (i) such application shall be without prejudice to the rights of interested parties to seek a modification of such application under Section 506(a) or otherwise, and (ii) IOFUS's rights, claims and defenses with respect to any such requested modification are fully preserved. All payments to IOFUS hereunder shall be made on or before the 23rd day of the month. On or before the 23rd day of each month, the Debtor shall likewise deliver the following reports to IOFUS' counsel: (i) copies of all monthly operating reports filed with the office of the United States Trustee; and (ii) such other financial statements, information, and

reports as IOFUS shall reasonably request. The Debtor shall deliver to IOFUS's counsel copies of any documents and/or reports that are provided directly to IOFUS.

(ii) *Payments to Bay Colony.* Bay Colony shall receive monthly payments equal to $500.00. Bay Colony may apply such payments to reduce the obligations to it in accordance with the terms of its loan agreement, provided that: (i) such application shall be without prejudice to the rights of interested parties to seek a modification of such application under Section 506(a) or otherwise, and (ii) Bay Colony's rights, claims and defenses with respect to any such requested modification are fully preserved. All payments to Bay Colony hereunder shall be made on or before the 23rd day of the month.

(c)     Priority of Adequate Protection Obligations. To the extent that the Adequate Protection Liens fail to adequately protect IOFUS against any diminution in value of the Pre-petition Collateral, IOFUS shall hold a claim pursuant to Section 507(b) of the Bankruptcy Code, with priority in this chapter 11 case in accordance with the provisions of section 507(b) of the Bankruptcy Code, over all administrative expenses of the kind specified in section 507(a)(2) of the Bankruptcy Code. With the exception of the costs and expenses of a superseding Chapter 7 trustee and unpaid quarterly fees owed to the United States Trustee, no costs or administrative expenses which have been or may be incurred in the Debtor's Chapter 11 case, in any conversion of the Debtor's chapter 11 case pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims are or will be prior to or on a parity with the Adequate Protection Obligations.

4.     No Implied Consent. No consent by IOFUS to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed

to IOFUS or the Pre-petition Collateral pursuant to the provisions of 11 U.S.C. Section 506(c) or otherwise by, through, or on behalf of the Debtor shall be implied from any action, inaction, or acquiescence by IOFUS or otherwise. Except as expressly set forth in this Order, (a) IOFUS has not consented or agreed to the use of the Cash Collateral or any surcharge of the Pre-petition Collateral under 11 U.S.C. Section 506(c) or otherwise and (b) the right of IOFUS to object to any other use of its collateral is fully preserved.

5.    Termination.  Authorization of the Debtor to use Cash Collateral pursuant to this Final Order, shall cease on the earlier to occur of: (i) November 8, 2019, subject to extension upon further order of this Court; or (ii) entry of an order of the Court, terminating the use of cash collateral, upon motion by IOFUS alleging the occurrence of a Termination Event (as defined below) that is not remedied by the Debtor within five days of written notice by IOFUS, except where designated "No Notice Required" (the "Termination Date").  Notwithstanding anything herein, the following events shall constitute Termination Events (each, a "Termination Event"):

(i)    non-compliance by the Debtor with any of the material terms or provisions of this Final Order;

(ii)    any stay, reversal, vacatur, rescission, or other modification of the terms of this Final Order not consented to by IOFUS in its absolute discretion;

(iii)    entry of an order by this Court or any other Court having jurisdiction over this chapter 11 case approving any post-petition financing not consented to by IOFUS in its absolute discretion;

(iv)    entry of an order by this Court dismissing the Debtor's chapter 11 case or converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, in each case, not consented to by IOFUS in its absolute discretion (No Notice Required);

(v)    the appointment of a trustee or the appointment of an examiner in the Debtor's chapter 11 case;

(vi)    the lifting of the automatic stay to permit the exercise of secured creditor remedies with respect to any property of the Debtor having a value in excess of $50,000 individually or in the aggregate;

(vii)    the failure to timely make any payment to IOFUS required under this Final Order;

(viii)    the incurrence or payment by the Debtor of expenses other than in accordance with the Budget or other failure of the Debtor to comply with the Budget in accordance with this Final Order as determined by this Court; and

(ix)    the filing of any motion or adversary proceeding, objection or other pleading in this Court or any other court by the Debtor or any other party that asserts any Claims and Defenses (as defined herein) against IOFUS, provided, however, that a request for an accounting of the balance owed or of the application of funds remitted to IOFUS shall not be a Termination Event.

IOFUS shall provide notice of any Termination Event in writing to the U. S. Trustee, counsel to the Debtor, and to any Committee and/or counsel to any Committee, given by hand, telecopier, email, or other means reasonably intended to provide immediate delivery.  Notwithstanding anything in this Final Order, all of the rights, remedies, liens, benefits, and protections provided to IOFUS under this Final Order shall survive the Termination Date.

6.    Claims and Defenses.  The Debtor acknowledges that IOFUS has duly perfected first position security interest in the above-described Collateral and Property, including any and all fixtures affixed to the Property but not any personal property that may be owned by the Debtor, and further acknowledges that IOFUS's claim is a secured claim within the meaning of Section 506 of the Bankruptcy Code to the extent of the value of IOFUS's collateral, duly enforceable in accordance with its terms. Notwithstanding the foregoing, nothing contained herein in this Order shall adversely affect or waive any right of any other party in interest, including, without limitation, the rights and claims of any Creditor's Committee, Chapter 7 or Chapter 11 Trustee or of the

10

secured or unsecured creditors of the Debtors to challenge the amount, validity, perfection, priority extent or enforceability of any liens previously or herein granted to Debtor, provided, however, that any such challenge shall take place within ninety (90) days of (i) for any party in interest, the entry of this Final Order; (ii) for the creditor's committee, the entry of an order approving the employment of counsel to the creditor's committee; and (iii) for a Chapter 11 or Chapter 7 trustee, the entry of an order approving the employment of counsel to said Chapter 11 or Chapter 7 trustee. **The Debtor acknowledges, agrees and understands that the provisions of this section vary from MLBR § 4001-2(c)(2) and (4).**

7.    Access.  The Debtor shall permit representatives, agents, and/or employees of IOFUS to have reasonable access to its premises, its records, and its officers, consultants, and employees during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

8.    No Payment of Members, Partners, Insiders, Affiliates or Professionals. The Debtor shall not use any of its income from the Property to pay any members, partners, insiders, affiliates or professionals of the Debtor, unless otherwise approved by the Bankruptcy Court.

9.    Binding Effect.  The provisions of this Final Order shall be binding upon and inure to the benefit of IOFUS and the Debtor, and to the extent permitted by applicable law any trustee hereafter appointed for the estate of the Debtor, whether in the

chapter 11 case or in the event of the conversion of any chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code.

10.   Survival.  If any or all of the provisions of this Final Order are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other Court, such modification, vacatur, amendment, or stay shall not affect the validity or enforceability of any security interests, liens, transfers, or priority authorized or created hereby prior to the effective date of such modification, stay, vacation, or order.  The validity and enforceability of all security interests, liens, transfers, and priorities authorized or created by this Final Order shall survive the conversion of the Debtor's case to one administered under chapter 7 of the Bankruptcy Code (and shall continue in any such successor case) or the dismissal of such case, if any.  In the event of any dismissal of this case, the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of determining and /or enforcing any Adequate Protection Obligations and Adequate Protection Liens. Notwithstanding any reversal, stay, modification, or vacation of this Final Order, any use of Cash Collateral prior to such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Final Order, and IOFUS shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to such use.

11.   General Authority to Perform.  The Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages, and financing statements), and to make all payments which may be required or necessary for the Debtor's performance hereunder.

12

12.    No Waiver. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of IOFUS to (i) request additional or further adequate protection of IOFUS's interests in its collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code, (ii) request conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code or the appointment of a trustee or examiner, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; (b) any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of IOFUS; or (c) any of the Debtor's rights, claims and defenses with respect any of the foregoing asserted by IOFUS.

13.    No Third-Party Beneficiaries. No rights are intended to be created under this Final Order for the benefit of any third party or creditor or any direct or indirect incidental beneficiary, except as specifically provided in this Final Order.

14.    Headings. The headings contained in this Final Order are for convenience of reference only and shall not affect the interpretation of the provisions of this Final Order.

15.    Effect of Order. This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. **Certain of the terms and conditions of this Final Order, set forth herein in Bold, vary from the requirements of MLBR 4001-2(c)**.

16.    Insurance. The Debtor shall at all times maintain such fire, hazard casualty, and comprehensive public liability insurance as is currently in effect. Upon request, the Debtor shall furnish to IOFUS written evidence of such insurance coverage.

August ___, 2019 at Springfield, Massachusetts

Elizabeth D. Katz
United States Bankruptcy Judge

Final Order Agreed to by:

/s/ Jonathan M. Hixon
Jonathan M. Hixon, Esq., Counsel to IOFUS

13\0271\HOE Ch.11\Final Cash Collateral Order (Rev)