UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|   |   |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| HANKEY O'ROURKE ) | Case No. 19-30500-EDK |
| ENTERPRISES, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |

**MOTION FOR AN ORDER CONVERTING THIS CASE TO A CASE UNDER
CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(B)**

IOFUS-FCC Holdings I, LLC ("IOFUS"), a secured creditor of the Debtor Hankey O'Rourke Enterprises, LLC (the "Debtor"), hereby moves (the "Motion") this Court for the entry of an order converting this case to a case under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to 11 U.S.C. § 1112(b), and as grounds therefore state as follows:

**INTRODUCTION**

1. The Debtor has been in this Chapter 11 proceeding for over one year, during which time the Debtor has sought and failed to sell the real property which serves as IOFUS' collateral, due to the Debtor's inflated valuation and insistence on maintaining the operation of a bowling alley at the property. Despite the Debtor's assertions to the contrary throughout this proceeding, there has been continuing loss to or diminution of the estate, now exacerbated by the Covid-19 pandemic and state of emergency imposed in the Commonwealth of Massachusetts, and there is no reasonable likelihood of rehabilitation as liquidation (which has been the Debtor's plan from the outset) is now the only feasible and efficient manner to repay creditors. As such, cause exists to convert the Debtor's case to Chapter 7, which is in the best interests of all the creditors.

1

## FACTUAL AND PROCEDURAL BACKGROUND

**A.  The Property**

2.  The Debtor is the owner of commercial real estate at 109 Stockbridge Road, Great Barrington, Massachusetts (the "Property") which contains a bowling alley, indoor mini golf, arcade, café and bar. *See* Dkt. No. 7 at ¶ 2. The Debtor rents the Property to an affiliated entity, Cove Bowling & Entertainment, Inc. ("Cove"), owned by Debtor's principals, which operates the bowling alley, mini golf, arcade, café and bar. *Id.* at ¶¶ 2-3. The Debtor and Cove have a triple net lease under which Cove is responsible for monthly payments covering the Debtor's debt service, real estate taxes and insurance for the Property. *Id.*

**B.  Procedural History and the Debtor's Delay**

3.  The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 21, 2019. *See* Docket No. 1.

4.  That same day, the Debtor filed its *Emergency Motion for Use of Cash Collateral* [Docket No. 7] which the Court allowed on June 26, 2019 [Docket No. 19], requiring on an interim basis, *inter alia*, the Debtor to make adequate protection payments to IOFUS in the amount of $8,075.00 and to Bay Colony Development Corp. as servicer for the United States Small Business Administration ("Bay Colony") in the amount of $500.00 (the "Interim Order"). *See* Docket No. 30.

5.  On June 27, 2019, the Debtor filed its *Schedules* wherein it indicated that the Property was valued at $2,500,000.00. *See* Docket No. 24 at pg. 4. The Debtor listed two secured creditors, IOFUS and Bay Colony, with claims in the amount of $896,692.04 and $743,879.54 respectively, for total secured claims in the amount of $1,640,571.58. *Id.* at pgs. 7-9.

6. On August 8, 2019, this Court entered an *Agreed Final Order Providing Adequate Protection and Authorizing Use of Cash Collateral* [Docket No. 41] (the "Final Order") imposing similar requirements as set forth in the Interim Order, including the same adequate protection payments to IOFUS and Bay Colony, among other things, through November 8, 2019.

7. On October 30, 2019, the Debtor filed its *Motion for Continued Use of Cash Collateral* [Docket No. 53], seeking to use cash collateral on the same terms as set forth in the Final Order through January 2020, while it "continu[es] to actively market the Property" and prepares a plan and disclosure statement. The Court allowed the Debtor's motion and scheduled a further hearing on January 22, 2020. *See* Docket Nos. 56-57.

8. On January 22, 2020, at the continued hearing, the Court allowed the continued use of cash collateral as set forth in the Final Order through April 9, 2020 and ordered the Debtor to file a plan and disclosure statement on or before March 16, 2020. *See* Dkt. No. 60.

9. On March 10, 2020, the Debtor sought an extension of time to file its plan and disclosure statement on the grounds that the principals of the Debtor were potentially exposed to the "coronavirus" and were self-quarantined for fourteen days and therefore were unable to complete review of the disclosure statement and plan. *See* Docket No. 64. This Court allowed the motion and extended the deadline to April 16, 2020. *See* Dkt. No. 66.

10. On April 8, 2020, the Debtor filed its Motion to Modify Cash Collateral Order, and to Further Extend Deadline to File Plan and Disclosure Statement, wherein the Debtor sought, *inter alia*, a moratorium on adequate protection payments for the months of April and May, 2020; to make adequate protection payments to IOFUS from any EIDL or PPP loan proceeds, after payment of certain expenses; and a further extension of the plan and disclosure statement deadline to June

3

8, 2020. *See* Dkt. No. 68. The basis for the Debtor's request was Cove's inability to operate and pay rent, "which in turn renders the Debtor unable to make adequate protection payments." *Id*.

11. The Court allowed the Debtor's motion and entered a moratorium on adequate protection payments for April and May, 2020 and extended the Debtor's deadline to file a plan and disclosure statement to June 8, 2020. *See* Dkt. No. 74.

12. Then, on June 3, 2020, the Debtor sought a further extension of time to file a plan and disclosure statement, once again relying on Cove's inability to operate and purported inclusion in "Phase 4" of the Commonwealth of Massachusetts' phased reopening plan. *See* Dkt. No. 76. The Debtor then concludes, that due to Cove's operational and financial difficulties, "[i]t would be almost impossible to develop meaningful projections until there is more certainty in the health and safety conditions under which the Cove will be required to resume operations." *Id*.

13. That same day, the Court allowed the motion and extended the deadline for the Debtor to file a plan and disclosure statement to August 10, 2020. *See* Dkt. No. 77.

14. Similarly, on June 11, 2020, the Debtor sought and was granted a continued moratorium on its adequate protection payments to IOFUS, on the grounds that Cove was still unable to operate due to the Covid-19 pandemic and State of Emergency in the Commonwealth of Massachusetts. *See* Dkt. No. 78.

15. As of the date of filing this Motion, the Debtor has not made an adequate protection payment to IOFUS since March 2020.

16. While the Debtor has consistently relied on Cove's inability to operate in order to delay filing a plan and eliminate its adequate protection payments, when Cove (which is owned and controlled by the same principals as the Debtor) obtained $35,500 in PPP and EIDL funds, none of such funds were proposed to be paid to Debtor as rent, which in turn could be paid toward the

Debtor's outstanding adequate protection obligations, even though such rental payments were contemplated and authorized by the SBA and this Court.

17. Instead, the funds were used, *inter alia*, to pay certain expenses and to make payroll payments, the majority of which went to the Debtor's principals and their relatives - approximately $11,825 total to Thomas Hankey, Sheila Hankey (Thomas' wife) and Juanita O'Rourke.

    **c.**    **The continuing diminution of the Debtor's estate and the absence of a reasonable likelihood of rehabilitation**

18. The Debtor's Monthly Operating Reports reveal that the Debtor often had negative cash flow in any given month, while failing to pay certain expenses (specifically, accountant fees), giving the Debtor limited if any available funds on a month to month basis. A true and accurate copy of the Debtor's Monthly Operating Reports are attached hereto, collectively, as Exhibit "A." The only reason the Debtor's operating account remains positive is due to a $1,000 deposit in April 2020 from the Small Business Administration due to submitting an application for an EIDL loan. *See* Exhibit A, April 2020 MOR. However, the Debtor indicates it does not expect any income next month, and the only funds it has available to it are $37,400 from a recently approved EIDL loan, the majority of which are being used to pay pre- and post-petition real estate taxes in the amount of $32,000 and UST fees. *See* Dkt. No. 80. Meanwhile, from June 2019 to May 2020, the amount of rent owed to the Debtor by Cove has increased from $0 to $64,861.00. *See* Exhibit A.

19. From the outset of this case, the Debtor has sought to sell the Property to fulfill its obligations to its secured creditors. The Property has been listed for sale since March 2019, initially at a listing price of $2,995,000.00 as of the Petition Date. *See* Dkt. No. 8 at ¶ 7. Then, consistent with the Debtor's valuation of the Property in its Schedules, the Debtor then reduced the listing price to $2,499,000.00 in or around August 2019. *See* Dkt. No. 33 at ¶ 7 and Exhibit A. The Property is currently listed for sale at $2,100,000.00. A true and accurate copy of the listing for

5

the Property is attached hereto as Exhibit "B."[1]

20. Debtor's counsel has advised that the Debtor has not received any offers to purchase the Property.

21. The lack of interest in the Property is likely attributable to the Debtor's overvaluation of the Property. While the Debtor values the Property at $2,500,000 as of the Petition Date, the Property was worth $1,500,00 as of January 24, 2020. A true and accurate copy of an Appraisal Report dated January 24, 2020 is attached hereto as Exhibit "C." As set forth in the Appraisal, the current use as a bowling alley is not the "Highest and Best Use" for the Property. Specifically, the Appraisal states that "the existing improvements are considered to not represent the highest and best use of the Subject site…the building is clearly best used as an alternate use, most likely commercial with some retail use." *Id*. at pg. 25.

22. Based on these values and the current lack of rental income, the Property has likely lost considerable value due to depreciation and deferred maintenance, and there is no equity available to the Debtor in the Property. To date, three Proofs of Claim have been filed totaling $1,654,343.84 in secured claims and $775.00 in unsecured claims. A true and accurate copy of the Claims Registry is attached hereto as Exhibit "D."

23. The foregoing constitutes IOFUS' statement of undisputed material facts for the purposes of MLRB 1017-1(c).

---

[1] The listing provides that the $2,100,000.00 listing price is only for the Property, not the business (Cove). The listing price for both the Property and Cove is $2,750,000.00. *Id*.

**LEGAL ARGUMENT**

I.    **The Case Should be Converted to a Case under Chapter 7**

24.    "Section 1112(b) governs conversion or dismissal of a chapter 11 case." *Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 171 (B.A.P. 1st Cir. 2016).

25.    That section provides, in pertinent part:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1) and (b)(2).

26.    Section 1112(b)(1) "invokes a two-step analysis, first, to determine whether 'cause' exists either to dismiss or to convert the chapter 11 proceeding to a chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate." *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 200 (Bankr. D.P.R. 2014) (internal citations omitted).

7

27. "The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case." *Andover Covered Bridge, LLC*, 553 B.R. at 171 (citation omitted). While the term "cause" as used in § 1112(b) is not defined in the Bankruptcy Code, Section 1112(b)(4) provides a "nonexclusive list of what constitutes cause" including, but not limited to, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

28. Additionally, "[c]ourts also dismiss or convert chapter 11 cases for 'unreasonable delay by the debtor that is prejudicial to creditors.'" *In re Francis*, 2019 WL 1265316, at *4 (B.A.P. 1st Cir. Mar. 14, 2019) citing *In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir. 1991) (internal citation omitted) and *In re Camann*, No. 00-11090-JMD, 2001 WL 1757075, at *4 (Bankr. D.N.H. Mar. 19, 2001) (internal citation omitted). Because the list set forth in Section 1112(b)(4) is not exhaustive, "the court may convert or dismiss a case 'for reasons that are not specifically enumerated in the section, provided that these reasons are sufficient to demonstrate the existence of cause.'" *Id.* quoting *In re Colón Martinez*, 472 B.R. at 144 (citation omitted) (internal quotations omitted).

**A. Cause Exists to Convert this Case to Chapter 7**

29. Under section 1112(b)(4)(A), cause for conversion or dismissal is established if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The moving party must show both a continuing loss to the estate *and* the absence of a reasonable likelihood of rehabilitation. *In re Alves Photo Serv., Inc.,* 6 B.R. 690, 693 (Bankr. D. Mass. 1980).

30. "The first prong, that 'the estate is suffering a substantial or continuing loss or diminution,' may be satisfied if the movant demonstrates that the debtor continues to incur monthly

8

losses." *In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D.N.Y. 2019) citing *In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010). As explained above, the Debtor's only source of income is the monthly rent paid by its tenant, which tenant has not paid since March. In total, the tenant (owned by the same principals as the Debtor) owe the Debtor in excess of $64,861 in unpaid rent, with no discernible plan to repay the outstanding sums or its rental obligation moving forward. Moreover, the Debtor's MORs reflect that the minimal cash on hand in the estate has continued to decline throughout the life of this case, and is only still positive due to a $1,000 deposit from the Small Business Administration as an advance of funds for the Debtor's EIDL application in April. Any surplus funds from the EIDL loan after payment of real estate taxes and UST fees will be negligible. The Debtor admits it does not intend to operate next month, has not paid its bills on time and has not timely filed or paid its taxes. Finally, the value of the Property has declined due, in part, to the Debtor's failure to list the Property for sale at a reasonable value over the past year and the current lack of cash flow.

31. The second prong, regarding "the absence of a reasonable likelihood of rehabilitation," can be satisfied in several ways, including "if the movant demonstrates that the debtor will not have cash flow from which its current obligations can be met" or due to a debtor's intention to liquidate its assets. *In re Sillerman*, 605 B.R. at 656 (Bankr. S.D.N.Y. 2019) citing *In re BH S & B Holdings, LLC*, 439 B.R. at 346-348. The Debtor fits into both of these categories and has no reasonable likelihood of rehabilitation: Debtor has *no* cash flow currently and no prospects of having sufficient cash flow to meet its current obligations, and has clearly indicated its intention to liquidate by having the Property listed for sale since March 2019.

32. In addition to the continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation, the Debtor has caused unreasonable delay prejudicial to its

creditors. Despite one year in Chapter 11, the Debtor has failed to file a plan and disclosure statement and has made no progress toward proposing a feasible plan.

33. "While the complexity and nature of the case often dictate its pace, a debtor cannot wallow in chapter 11." *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995). "The debtor must prosecute his or her case to a prompt and successful conclusion through confirmation of a plan." *Id*.

34. This Chapter 11 case is not complex. The Debtor has a single encumbered asset with one tenant, owned by the same principals as the Debtor, and few creditors to pay. Under the circumstances, the Debtor's failure to file a plan after one year is unreasonable and has caused prejudicial delay, requiring conversion or dismissal. *See id*. citing *Hall v. Vance*, 887 F.2d at 1044 (failure to file a plan within eight months); *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986) (failure to file feasible plan after sixteen months); *In re Canion*, 129 B.R. 465, 470 (Bankr. S.D. Tex. 1989) (failure to file a plan and disclosure statement within ten months); *In re Cohoes Indus. Terminal, Inc.*, 65 B.R. 918, 921 (Bankr.S.D.N.Y.1986) (failure to file a plan for more than five months).

**B. Conversion is in the Best Interests of the Creditors and the Estate**

35. "Once cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors." *In re Francis*, 2019 WL 1265316, at *5 quoting *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. at 195 (citation omitted). After finding cause, "the court's discretion is limited; it must grant some form of relief unless § 1112(b)(2) applies." *Id*. quoting *In re Korn*, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (footnote omitted) (citations omitted).

36. "The standard for choosing between conversion or dismissal based on 'the best interest[s] of creditors and the estate' implies application of a balancing test by the bankruptcy court." *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. at 196 (citing *De Jounghe v. Lugo Mender (In re De Jounghe)*, 334 B.R. 760, 770 (B.A.P. 1st Cir. 2005).

37. "While the Bankruptcy Code does not define 'best interests' for purposes of the § 1112(b)(1) inquiry, courts typically consider:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10)[ ] whether the appointment of a trustee is desirable to supervise the estate and address possible environment and safety concerns."

*In re Francis*, 2019 WL 1265316, at *5 citing *In re Andover Covered Bridge*, LLC, 553 B.R. at 178 (internal citations omitted).

38. Oftentimes, the following principal is considered when determining whether to convert or dismiss a case: "[C]reditors are generally 'best served by the course of action that results in the largest number of [them] being paid the largest amount of money in the shortest amount of time.'" *Id.* quoting *In re Aurora Memory Care, LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018) (internal citations omitted). More simply put: "The best interest of the estate turns on whether its economic value 'is greater in or out of bankruptcy.'" *Id.* (citations omitted).

39. The factors set forth above favor conversion of this case. A Chapter 7 trustee would ensure equality of distribution among the creditors and would have the ability to pursue Cove for

11

unpaid rents owed to the Debtor dating back to June 2019, which would benefit the creditors. The estate's value as an economic enterprise is maximized by the sale of the Property – not continuing to operate as a bowling alley – which a chapter 7 trustee can quickly effectuate at a reasonable value, which the Debtor has been unable to do since initially listing the Property in March 2019.

WHEREFORE, IOFUS-FCC Holdings I, LLC requests that this Court enter an order converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

> IOFUS-FCC Holdings I, LLC,
> By its attorneys,
>
> /s/ Jonathan M. Hixon
> Jonathan M. Hixon, BBO # 692420
> jmh@bostonbusinesslaw.com
> Hackett Feinberg P.C.
> 155 Federal Street, 9th Floor
> Boston, MA  02110
> Tel. (617) 422-0200
> Fax. (617) 422-0383

## **CERTIFICATION**

I, Jonathan M, Hixon, hereby certify, under the pains and penalties of perjury, that I complied with Local Bankruptcy Rule 1017-1(a) by serving a letter, on July 14, 2020, upon counsel to the Debtor requesting that counsel schedule a telephone conference to discuss the grounds set forth in this Motion for conversion of this case to a case under Chapter 7 of the Bankruptcy Code. On July 16, 2020 at 3:30PM, counsel for the Debtor and the undersigned counsel participated in a conference, but were unable to resolve the issues set forth in the motion or eliminate any areas of dispute. Based upon the foregoing, I made a good faith effort to: (i) resolve the Creditors' asserted grounds for conversion of this case; and (ii) to otherwise eliminate any areas of dispute with regard to the issues raised in this Motion.

> /s/ Jonathan M. Hixon
> Jonathan M. Hixon

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 17, 2020, I served a true and correct copy of the foregoing document on the following individuals below via the following manner:

**ECF filing system**:
Jonathan Hixon on behalf of Creditor IOFUS-FCC Holdings I, LLC
JMH@bostonbusinesslaw.com

Richard King
USTPRegion01.WO.ECF@USDOJ.GOV

Lisa D. Tingue on behalf of Assistant U.S. Trustee Richard King
lisa.d.tingue@usdoj.gov

Steven Weiss on behalf of Debtor Hankey O'Rourke Enterprises, LLC
sweiss@ssfpc.com, astephan@ssfpc.com

                                                /s/ Jonathan M. Hixon
                                                Jonathan M. Hixon, BBO # 692420