UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Chapter 11 |
| HANKEY O'ROURKE | ) Case No. 19-30500-EDK |
| ENTERPRISES, LLC, | ) |
|  | ) |
| Debtor. | ) |
|  | ) |

**OBJECTION OF IOFUS-FCC HOLDINGS I, LLC TO DEBTOR HANKEY O'ROURKE ENTERPRISES, LLC'S FIRST AMENDED DISCLOSURE STATEMENT**

IOFUS-FCC Holdings I, LLC ("IOFUS"), a secured creditor of Hankey O'Rourke Enterprises, LLC ("Hankey" or the "Debtor"), the above-captioned Debtor, hereby objects to the First Amended Disclosure Statement dated December 2, 2020 (the "Amended DS") filed in connection with the Debtor's First Amended Plan of Reorganization dated December 2, 2020 (the "Amended Plan"), and in support of this Objection, IOFUS states as follows:

**Introduction**

1. This Court should deny approval of the Amended DS because it describes an Amended Plan which is un-confirmable on its face, and fails to provide adequate information to creditors to make an informed judgment about the Amended Plan as required under 11 U.S.C. § 1125.

2. The Amended Plan is unconfirmable on its face because it fails to properly classify the SBA, which if properly classified as having both a secured and unsecured claim, has a blocking position, and therefore the Amended Plan fails to comply with 11 U.S.C. §1129(a)(10) (at least one class of impaired claims accepts the plan).

3. Moreover, the Amended DS fails to provide adequate information which would permit creditors to make an informed judgment about the Amended Plan, including but not limited to: i) a clear valuation of the Debtor's sole asset, the real property located at 109 Stockbridge Road, Great Barrington, Massachusetts (the "Property"); ii) the treatment of administrative claims, secured claims and general unsecured claims; and iii) an explanation of how the claims are paid in the event there is no sale or refinancing of the Property.

### A.     The Amended Plan is Unconfirmable

4. Where a plan is clearly un-confirmable, the Court should refuse to approve the disclosure statement regardless of whether it is otherwise acceptable (which IOFUS disputes as set forth in more detail below). *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr.D.Mass.1991); *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 369 (Bankr. D. Mass. 2005); *In re O'Leary*, 183 B.R. 338, 338–39 (Bankr. D. Mass. 1995) ("Courts may refuse to approve disclosure statements that describe plans that cannot be confirmed").

5. The Debtor again misclassifies the SBA, based largely due to its inconsistent valuation of the Property, in order to gerrymander votes to obtain acceptance of the Amended Plan.

6. In Class One, the Debtor classifies IOFUS as fully secured based on a $1,500,000 valuation of the Property, yet in Class Two, the Debtor classifies the SBA as fully secured based on a $2.1 million valuation. The Class One and Class Two claims total $1,654,343.84 as of the Petition Date.

7. The Debtor cannot classify Claim One based on a $1.5 million valuation and Class Two based on a $2.1 million valuation. Based on a $1,500,000 valuation of the Property (which is the agreed value among all parties, including the Debtor), the SBA is under secured by at least $154,343.84. As such, the SBA's claim is really a secured claim in Class Two of no more than

$589,535.70 and an unsecured claim of no less than $154,343.84. This unsecured claim should be classified as a general unsecured claim in Class Four. *See In re Barney & Carey Co.*, 170 B.R. 17, 25 (Bankr. D. Mass. 1994) (holding that unsecured deficiency claims remain of the same legal priority as the general unsecured claims and thus cannot be separately classified). The Amended DS and the Amended Plan do not reflect this, which is not only a disclosure issue, but make the Amended Plan patently unconfirmable.

8. The only other unsecured claim filed to date is for $775. See Proof of Claim No. 3. Thus, when properly classified, the SBA's unsecured claim accounts for 99.5% of the unsecured claims in Class Four.

9. The Amended DS and Amended Plan[1] indicate that Class One, Class Two, Class Four and Class Six are impaired, and thus one of such classes would need to accept the Amended Plan in order to comply with the requirements of 11 U.S.C. §1129(a)(10). Since Class Six represents the membership interests of insiders of the Debtor, such class' vote is excluded from this requirement, and the Debtor must therefore obtain acceptance of the Amended Plan from Class One (IOFUS), Class Two (SBA) or Class Four (general unsecureds).

10. As set forth above, the SBA accounts for 99.5% of the general unsecured and thus controls Class Four and is in a blocking position. The SBA filed an Objection to the Amended DS [Docket No. 126], indicating it does not support the Amended Plan. As such, the Amended Plan is unconfirmable on its face, and the Amended DS should not be approved.

---

[1] There are discrepancies in how the Amended DS and Amended Plan describe and treat Class Three, Class Four, Class Five and Class Six; but for purposes of determining compliance with 11 U.S.C. §1129(a)(10), IOFUS will ignore such discrepancies and address them in the Section B, *infra*.

**B. The Disclosure Statement Fails to Provide Adequate Information**

11.     The Disclosure Statement fails to provide adequate information which would permit creditors to make an informed judgment about the Plan as required by 11 U.S.C. §1125.

       *i. The Amended DS lacks sufficient information about the valuation of the Property*

12.     As discussed above, the Amended DS uses varying valuations of the Property to suit the Debtor's particular needs, and therefore does not provide adequate information to creditors to evalute the Amended Plan. In the description of the case, the Debtor states that the Property is being listed at $2.1 million and that it disputes the $1.5 million "valuation and the analysis on the appraisal" provided by IOFUS which sets forth the fair market valye and highest and best use. *See* Amended DS at pg. 6. However, the Debtor then uses the $1.5 million valuation in classifying IOFUS' claim in Class One, but reverts back to its unsubstantiated $2.1 million valuation in classifying the SBA's claim in Class Two. Then, the Debtor later uses the $1.5 million valuation in its liquidation analysis to argue that the Amended Plan is in the best interest of the creditors compared to a Chapter 7 proceeding. Thus, once again, the Amended DS appears to cherry-pick disparate valuations and thus lacks sufficient information for creditors to make an informed judgment about the Debtor's ability to make the payments to claims in Class One, Class Two and Class Four, and whether the Amended Plan is in their best interests.

13.     Moreover, the Debtor indicates that it has recently received an offer for the Property and is in active negotiations with the potential buyer. The Debtor fails to make any disclosure related to this potential sale, including the offer price and timeline for a purchase and sale or closing. Certainly, any such information would be evidence of the valuation of the Property which could assist a creditor in evaluating the Amended Plan.

14.    The Debtor is effectively proposing a sale plan that, if confirmed, would need to occur by no later than August 31, 2021, when the Class One Claim is due (under the terms of the proposed Amended Plan). However, the Debtor not only fails to adequately disclose information regarding the potential sale discussed in the Amended DS, but lacks any information regarding how it intends to sell the Property, which it has been unable to do for the past year and half. There is no marketing plan, pricing schedule, or any other information which a creditor could review to provide insight on the Debtor's ability to sell the Property. The Property has been listed for sale since March 2019, initially at a listing price of $2,995,000.00 as of the Petition Date. *See* Dkt. No. 8 at ¶ 7. Then, consistent with the Debtor's valuation of the Property in its Schedules, the Debtor then reduced the listing price to $2,499,000.00 in or around August 2019. *See* Dkt. No. 33 at ¶ 7 and Exhibit A. The Property is currently listed for sale at $2,100,000.00. *See* Dkt. No. 85 at Exhibit B. In a year and a half, the Debtor has not received any offers sufficient to pay the secured claims, yet has premised payment of those claim in the Amended Plan on the sale of the Property at some undefined time in the future. The secured claims total $1,654,343.84 as of the Petition Date, and have increased during the pendency of this case. On the contrary, the Property was worth only $1,500,000.00 as of January 24, 2020. *See* Dkt. No. 85 at Exhibit C. Since then, the Property has likely lost considerable value as well, due to depreciation, deferred maintenance and the impact of the Covid-19 pandemic (resulting in the lack of any rental payments). The Amended DS fails to adequately disclose any of this information related to valuation and the Debtor's ability to sell the Property at a value which would pay the secured claims.

      *ii.    The Amended DS lacks sufficient information about payment of administrative claims, secured claims and unsecured claims*

15. The Debtor fails to provide sufficient information about the payment of administrative claims, the secure claims and the unsecured claims as provided for in the Amended Plan.

16. First, the Amended Plan proposes to pay Administrative Claims in full on the later of the Effective Date or the date they are allowed by the Court. The Amended DS provides that Debtor's counsel is owed, as of the date of filing, approximately $20,000 in fees and expects to incur additional fees related to ongoing Chapter 11 proceedings. It is highly likely that the $25,000 new value contribution will be consumed by the Debtor's counsel fees through the Effective Date of Amended Plan based on the amounts owed to Debtor's counsel, with an Amended DS and Amended Plan objection pending, and thus the Debtor is likely to be administratively insolvent upon the Effective Date of the Plan.[2] To address this issue, the Amended DS provides that "[t]o the extent that there are insufficient funds to pay professional fees in full at confirmation, the Debtor anticipates that the professional(s) will make accommodations to enable the plan to be consummated." However, the Amended DS gives no detail on what those accommodations will be and how the Debtor plans to pay them, and such accommodations are not mentioned nor contemplated by the Amended Plan.

17. Second, the Amended DS and Amended Plan provide that the Debtor commenced making monthly payments to IOFUS of $4,000 in November 2020, and that in January 2021 it will commence making payments of $8,100. However, the Amended DS fails to provide that the Debtor actually sought and obtained authorization to make a $4,000 payment in October and then

---

[2] This issue is exacerbated by the fact that the Debtor fails to include any budget which reflects administrative expenses. Thus, IOFUS' contention that the Debtor will be administratively insolvent and unable to make the payments contemplated by the Plan is based on its experience with the Debtor to date.

commence making $8,072 payments in November, *see* Docket No. 112, and has only made the October payment to date. Thus, the Amended DS fails to adequately disclose the status of payments to the Claim One Claimholder, IOFUS.

18. Third, the Amended DS and Amended Plan are contradictory on how they intend to treat Class Four Claims. In the Amended DS, the Debtor provides that Class Four Claims will be paid as follows: "Upon entry of a final order confirming the Plan, after payment of allowed administrative claims, the remaining contribution by the Debtor's shareholders, shall be distributed pro rata to the holders of Class Three and Class Four claims." On the contrary, in the Amended Plan, the Debtor provides that upon confirmation of the Amended Plan, "the Debtor shall pay all allowed, timely filed unsecured claims in full, without interest." Thus, according to the Amended Plan, the Debtor intends to pay Class Four Claims in full, without interest, upon confirmation of the Amended Plan, but in the Amended DS, the Debtor provides that Class Four Claims will be pro rata from the $25,000 contribution made by the Debtor's members, after the administrative claims. These provisions do not make an adequate disclosure regarding the funds potentially available to the unsecured creditors. As set forth above, the Debtor is highly unlikely to have any remaining funds available from the $25,000 new value contribution by the Debtor's shareholders, after payment of administrative claims, to pay toward the unsecured claims in Class Four. The Debtor should disclose this in the Amended DS, particularly when the Debtor has made it clear that it believes no funds would be available to unsecureds in its Chapter 7 liquidation analysis.

  *iii. The Disclosure Statement fails to detail what happens in the event that the Property is not sold or refinanced*

19. The Amended DS and Amended Plan fail to adequately describe what happens in the event the Debtor fails to sell the Property. The only reference to such a situation is in Claim One which provides that IOFUS can exercise its rights of foreclosure if its claim is not paid by

7

August 31, 2021. This is not a plan to repay the secured claims, but instead an extension of the maturity date without providing the terms of same. Due to the entirely speculative nature of a plan based on the sale of the Property, the Amended DS must provide adequate information about what happens in the event the Property is not sold. The Debtor's failure to include such information warrants denial of approval of the Amended DS.

    *iv.*    *General Objections to the Disclosure Statement*

20. The Amended DS should state that IOFUS intends to vote to reject the Amended Plan.

21. In order to avoid confusion as to IOFUS' and the Debtor's rights, the Amended DS and Amended Plan should provide that "except as expressly modified by the Plan, all of the pre-petition term notes, mortgages, loan agreements and other instruments and agreements between the Debtors and IOFUS and all of the terms, conditions, rights and remedies therein shall remain in full force and effect post-confirmation."

WHEREFORE, IOFUS respectfully requests that this Court enter an Order denying approval of the Amended DS.

    Respectfully submitted,
    IOFUS-FCC Holdings I, LLC,
    By its attorneys,

    /s/ Jonathan M. Hixon
    Jonathan M. Hixon, BBO # 692420
    jmh@bostonbusinesslaw.com
    Hackett Feinberg P.C.
    155 Federal Street, 9th Floor
    Boston, MA  02110
    Tel. (617) 422-0200
    Fax. (617) 422-0383

## **CERTIFICATION**

I, Jonathan M, Hixon, hereby certify, under the pains and penalties of perjury, that I complied with Local Bankruptcy Rule 3017-1(b) by conferring with counsel for the Debtor on December 4, 2020, but was unable to resolve the issues set forth in the motion or eliminate any areas of dispute.

/s/ Jonathan M. Hixon
Jonathan M. Hixon

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2020, I served a true and correct copy of the foregoing document on the following individuals below via the following manner:

**ECF filing system**:
Jonathan Hixon on behalf of Creditor IOFUS-FCC Holdings I, LLC
JMH@bostonbusinesslaw.com

Richard King
USTPRegion01.WO.ECF@USDOJ.GOV

Lisa D. Tingue on behalf of Assistant U.S. Trustee Richard King
lisa.d.tingue@usdoj.gov

Steven Weiss on behalf of Debtor Hankey O'Rourke Enterprises, LLC
sweiss@ssfpc.com, astephan@ssfpc.com

/s/ Jonathan M. Hixon
Jonathan M. Hixon, BBO # 692420

9